I'll call the last case of the day, 24-70-20, United States v. Bycroft. Good morning. May it please the court. My name is John Bolin of the firm of Bolin and Schall, appearing on behalf of defendant Jason Bycroft. It's a pleasure this morning to be interacting with Judge Matheson by audio and video feed over the internet. That's one thing pointed out by Judge Abell, writing for the court in the Egley or Eagley case, I'm not sure, Your Honor, how to pronounce that case name, that Judge Abell pointed out that doing oral arguments over the internet just underscored how important the internet is to everyday life, including the business of this court. The Egley case recounts, of course, that the internet is a means of communication that's become a necessary component of modern life. The computers and the internet become more and more important each year as time passes, and of course, now more than ever, the Eagley case says, the internet provides one of the central means of information gathering and communication in our culture. As the court knows, we're alleging plain error in the court's imposition of a special condition of supervised release that would ban the internet completely for Mr. Bycroft for the rest of his life. Mr. Bycroft was subject to a term of supervised release of life after he was released from prison, and special condition three of his judgment and conviction would allow the probation office to ban his access to the internet for that timeframe. Now, the chief argument against this is that in certain circumstances, that this court has described as extreme circumstances, the court may allow a prohibition of the internet completely, a complete ban, but the problem here is that the district court made absolutely no explanation or analysis of the issue before imposing this special condition of supervised release, which is required under the, I'm not sure if it's Coker or Cook case, K-O-C-H. We contend that that was error. The error is plain because the Coke case requires that kind of analysis and explanation on the record, according to the factors of 3583D, which the court was discussing in the very last argument, and of course, as to the third prong of plain error, we argue that there was prejudice. There's a reasonable probability that if the court had gone through the analysis and explanation related to this special condition under the court's prior precedent in Blair and Eagley, that the court would not have imposed this broad prohibition on the use of the internet. Blair addressed a special condition that was worded just like this one, and it differed from a prior case called Walser, which had said, well, the probation office has some discretion, so we're not sure that the probation office is going to completely ban the internet. But Blair looked at a similar provision and said, well, the probation office has the power to completely ban the use of the internet during the term of supervised release, and that's just too much. That is not, that would involve, that restriction would involve a greater deprivation of liberty than is necessary. And that's what we're dealing with here. Counsel, could I just jump in here and ask you, based on what you just said about Blair, why isn't this case a candidate, one of the rare cases in light of Blair, for a complete ban on internet usage based on the offense conduct in this case? Why doesn't the offense conduct in this case move it in the direction of what the district court actually did? Because the offense conduct in this case actually hardly involved the internet at all. The actual offense conduct in this case involved the production of depictions of child sexual activity that happened in person. The defendant and the children at issue met in person through people that they knew, they were at parties and the like, in a pool, and there was no internet usage for either enticing or luring children. There was no internet usage for disseminating these materials. The only internet usage that the, and this is confirmed by the government's brief, the answer brief at page 16, is that the defendant, after taking these photographs or videos, uploaded them to his personal Dropbox account, cloud storage, instead of using a local hard drive. That's really the only connection between the offense conduct and the use of the internet in this particular case. And so prohibiting Mr. Bycroft for the rest of his life from using the internet in any way is a greater deprivation of liberty than is reasonably necessary given that offense conduct. It's also nowhere near the kind of offense conduct that was involved in the Eagley case, where this court decided under plain error review, not to overturn the district court's decision to impose a complete internet ban. There, the defendant was involved in obtaining child pornography through the internet, and there were various restrictions imposed, much less than a complete ban of the internet. And the defendant, of course, kept violating those restrictions and accessing adult and child pornography from the internet. And so in exasperation, the district court finally said, okay, I've got to ban the internet entirely. This was the fourth revocation proceeding for violations of supervised release under the Eagley case. And in that circumstance, Judge Abell, writing for the court, determined perhaps, and the words used by the court were, this might be one of the extreme cases that we've been discussing where a complete internet ban would be appropriate. Also, in that case, what's really important here, in addition to the complete internet ban, is the lifetime nature of it. The Walser case, which was an early case, I think was overruled by Blair, but the Walser case involved a three-year period of supervised release. And of course, in this case, we're talking about the rest of Mr. Bycroft's natural life that this prohibition would be in place for. And I don't believe that the Eagley case involved a lifetime prohibition either. Is there a more fundamental predicate concern that the district court here didn't explain or provide any justification or explanation for why he did the internet ban? Wouldn't the proper approach for us would be simply to reverse and remand for the district court to reconsider that? And when the district court has to explain it, the court may decide it is too broad. I mean, we might remand saying this looks awfully broad and it looks like there could be concerns we'd have to think about in these other matters. But to do so, we need you to explain why you put that special condition in. By the way, see our three cases in the 10th Circuit that say you must explain all special conditions. That wasn't done here. And so we just remand and see what he does. Yes, Your Honor, I completely agree with that approach. I think that's correct. The precise error that we are identifying is the failure to analyze and explain on record the reasons for the trial court's ruling. But the reason that we've been talking about whether the court should impose this kind of prohibition is because we're in plain error land where there was no objection below. And so the third prong of plain error analysis involving whether the court would have changed its mind if it hadn't committed that error comes into play. I think that's why I'm talking about it. So at least there's a possibility. I mean, it's not a hypothetical or fanciful possibility that when the court has to justify that ban in light of other cases and judge the comparative problem here to others, there may be a different result. Yes, Your Honor, I agree. If there are no further questions at this time, I'll. Yes, you argued that First Amendment interests should be part of the analysis here. Yes, we did mention as to the fourth prong of plain error review, the fact that there is a bit of heightened scrutiny when a special condition of supervised release might impinge upon constitutional rights such as the First Amendment. That, we believe, went to the fourth prong of plain error review, whether the error seriously affects the fairness, integrity and public reputation of judicial proceedings. We think that this type of special condition is especially important for the judiciary to get right, because in our day and age, many places on the Internet are really the public square in this day and age. If there are no questions at this time, I'll reserve the remaining time. Thank you. Thank you, counsel. Ms. Williams. Good afternoon, Your Honors, Lisa Williams, representing the United States of America. Although counsel hasn't framed his argument as such, I think that there's a procedural reasonableness component to it and then a substantive reasonableness component to it. And the procedural reasonableness component is whether or not the explanation given by the district court is adequate or sufficient. And I think that I'd like to start there, just reading the tea leaves from the bench's comments. It seems that there may be some concerns that the explanation given by the district court was insufficient. In this case, of course, we're on plain error. So did the judge, did the district court, plainly err in failing to adequately explain the reasons for its sentence? The government first submits that there was no error, which was plain. The court gave a rather lengthy explanation as to all the factors that it considered in reaching its sentence. It's noted that it read every single piece of paper, which is significant because the defense sentencing memo, I believe, was 63 or 69 pages long. And so it wasn't a two pager. There was a lot of pre-trial or pre-sentencing pleadings finally filed by the parties that the court made clear that it read and considered. But there's, I mean, there's nothing in that, in the court saying that it read every single page, says nothing about the basis for the special condition. You're correct, Your Honor. That's really, we've required that.  Well, I think. I'm not quite sure why you don't, you're not conceding that there wasn't a sufficient explanation here. I think that I would like to talk about what this court has required. If you, the Koch case combined with Engelhardt does create a hierarchy of explanation required depending on what the supervised release condition is. And those cases say, if it's a standard condition, no explanation, or excuse me, a mandatory condition. We have a total ban. Yeah. Well, the government's going to push back a little bit on total ban, Your Honor, because of what EGLEE is a total ban. EGLEE. Without permission. No. I mean, that's what we have here. That's what, but here we have that permission component, which Billy recognized as a safety valve. And so the ban in this doesn't go quite as far as, as the ban in EGLEE. And I think EGLEE represents a total ban. Thus things that are. This is a significant deprivation. Significant deprivation. I would absolutely concede with that, Your Honor. But, but this hierarchy. So we don't have an explanation. I think you argued something about a common knowledge exception of which I'm not aware of. Well, that's, that's where I'm going to. So if it's a mandatory condition, no explanation is necessary. Then Koch and Engelhardt say that if it's a recommended by either Congress or the Sentencing Commission, then that is kind of the next level where no hyper-technical explanation is needed. That if, especially if it's a matter of common knowledge as to why the requirement would exist, the, the reasoning that the district court has to give is not as detailed as the third step, which is if the condition is not recommended by Congress or the Sentencing Committee. When, Commission, excuse me, when it's not recommended, that's when this court has said that the reason basis for applying the condition to a specific defendant has to exist and it has to exist in a, so that it's sufficient for this court to conduct review. But a statement of generalized reasons will suffice. And so that's what's necessary kind of at that third level. But here, here we're above that. We're, we're at the second level because the guidelines specifically say that in a case such as this, there should be restrictions on a defendant's use of the internet. And so the government submits that while... Counsel, can I just, counsel, could I just ask you on that last point, is this your argument based on Section 5B1.3b? Yes, Your Honor. And it, it recommends a condition limiting the use of a computer, that's the language, but it doesn't say anything about an absolute ban. I mean, there's a difference between limiting and a ban. So I'm not sure I see how this guideline gets you where I think you're trying to go. Well, Your Honor, I would, the government would submit that Mr. Bycroft will be able to use a computer or an internet after consulting with his probation officer and getting permission to do so. And so again, it's not an absolute ban, it's limiting his ability. The condition is framed, the condition is framed as a ban unless he gets permission. I mean, it starts off as a ban. And all I'm suggesting is that your reliance on that guideline doesn't seem to get you where you seem to want to go. Well, I would respectfully disagree, Your Honor, because I think that the way that we use computers today is, is interconnected with the internet. They are one in the same. And the fact that that's how the guidelines still reads, I think it's difficult to separate the two, that this is just talking about a computer to do word processing on. That, I don't think that's a fair reading of what the Sentencing Commission means when it use it, refers to computer. I think it means all of the use is contemplated by a computer, including access to the internet. I'm not referring to the use of the word computer, I'm referring to the use of the word limit. It seems like the limit only gets you so far. Well, again, I think that's the difference between the limitations versus total ban. And the government does not agree that this is a total ban because a total ban is what happened in Eagley. That's a total ban. And I do want to talk about Eagley for one second. First of all, it is a lifetime ban. Mr. Eagley was originally sentenced to 60 months of supervised release, but then had a second conviction for child pornography that resulted in a lifetime ban of, or excuse me, a lifetime term of supervised release. And what the district court judge said in Eagley is you are never using a computer again or the internet. Never. Not even for employment, which is really radical because employment implicates First Amendment or constitutional rights to do certain jobs. And Eagley is not an old case. Isn't your argument foreclosed by our Blair case? No, Your Honor. Why not? Because I think. That was the special condition that defendants use of computers and internet access must be limited to those the defendant requests to use and which the probation officer authorizes. And we said that was a complete ban and failed to place any restraints on a probation officer's ability to restrict the defendant's internet access. We called it a complete ban. That's what we have. The court did call it a complete ban. I'm not sure the government would submit that's dicta, especially again. How is that dicta? Well, because it wasn't the deciding whether or not the confines of that restriction constituted a complete ban was not essential to the court's holding in that case. And I would also note that Blair. I guess my point is, I mean, you can argue about what, you know, whether it's complete or not, but the fact is we don't really have a record to review because the district court didn't outline even generalized reasons here. So what would be the problem with remanding this back for those reasons? So I agree. And that's the first and second prong of plain error. But before the court remands it back, it also has to analyze the third prong of plain error, an effect on substantial rights. And Koch again in footnote 5 and the Barella decision, which is referenced in Koch, say that when analyzing a term of supervised release under plain error review, this court can only vacate a special condition if the record reveals no basis for the condition. And so before this court remands it back for the procedural error, it does have to reach the issue, which is kind of the substantive reasonableness of the condition itself. Is there a basis in the record to impose this supervised release condition? And that the government would submit there is. There is given, and in Barella, the court considered the nature, excuse me, the nature and scope of the offense, defendant's history and the results of his psychological exam. And the government submits that if the court considers those identical factors in this case, those support the the special condition number three, the restriction on computer use and the Internet. And that's kind of why you seem to be suggesting that unless unless we determine that count three, it's likely that the error didn't make any difference. That's the only scenario in which we can remand our our our hands really high in that regard. What if what if we what if we decide that the court didn't get an adequate explanation, finally didn't get an adequate explanation? And it's just unclear what would have happened if we had if the court district judge had had the benefit of working through reasons for the condition and in our judgment that this case would benefit from sending it back to the district court under those circumstances. Are you telling us you can't do that? I, Your Honor, respectfully, this court cannot bypass the third step of plain error review. It's the defendant's burden to establish all four prongs. Do you have a case that says that? I do. And I'll read it right. Well, what I'll read is from footnote five from the Koch decision. Because an absolute Internet ban is such an extreme restriction, we think it calls for an extraordinarily careful review and adequately explained supporting findings, which is what we're talking about. The district court failing to do. But even if we ignored Eagley's waiver on this issue, we would only review the lack of factual findings under plain error review. And under that review, we would vacate the absolute Internet ban only if the record reveals no basis for that condition. So this court can only vacate the condition and send it back if it finds no basis in We have we have cases, we have cases that say that in appropriate circumstances, we can even overlook a waiver. I mean, there the court has some discretion to ensure that these issues have been handled properly. And if it's just unclear what would happen if the district judge had given this kind of analysis and statement of reasons, why wouldn't we give the district judge the opportunity to do that? Well, Your Honor, I think the court, the government believes the court shouldn't find that, but the court can find that. But but that would be an analysis under the third prompt that with the court saying we do not see a basis for this restriction in the record. Therefore, we're going to or it's unclear. We're not convinced there's a basis for the restriction in the record. Therefore, we're going to send it back to the district court so that they can elaborate. But but that's still analyzing that the third prong of plain error review. All right. All right. So so if it's unclear, wouldn't that mean that there's at least some likelihood that the outcome would have been different? Um, I think that. If the court, yes, however, the government's position is that it's not unclear, and I would like to address those factors justifying the ban. That wasn't the question. If it is unclear, why isn't it likely that the outcome would have been different? Well, I'll say this. Even if it's unclear, I don't think it's not the government's burden, right? It's the defendant's burden. And if it's a toss up, it might be unclear that they haven't met their burden under plain error review. So the defendant has to demonstrate more. I mean, this is plain error review. It's an extremely high burden for the defendant to reach. And this court has never in this universe of cases on plain error review reversed an Internet computer limitation. Never. Eagley upheld it, Billy upheld it, and Wassler upheld it. We're not talking about reversing it right now. We're talking about remanding it so we can find out what the district court intended by it. Well, and the district court can connect the dots like it needs to. The district court can talk about reversing the condition in this particular conversation. But if this court finds on its own a reason to support it, it doesn't need to send it back to the district court, which I think is. What we have to find under prong three is a reasonable probability that the error affected the outcome of the proceedings. And that's not that. I mean, that's certainly not something beyond the pale hair. Well, and if I may, with my remaining 30 seconds, if I may, with my remaining 30 seconds, summarize why the ban is necessary, because I really do think the court has to look at the facts and the record. This is an individual who manufactured child pornography. It is not a possession of child pornography cases, which we don't have a manufactured case. And the Dropbox account, they're trying to minimize the importance of that. But please don't forget that on that Dropbox account, there were several pictures and videos of unknown pre-produced females. There's a 24 minute. And I see my time is up. If I may, please finish with this train of thought. There's a 24 minute video of an unknown prepubescent female undressing and masturbating. And so here's the thing, your honors. He either manufactures more child pornography than what he's charged with. These other videos on his Dropbox account, he either manufactured himself, which makes him more dangerous, or he accessed the Internet to download those videos and save them into his Dropbox account. But either of those situations means that he presents an incredible risk to the public. And so extreme measures such as this computer ban are warranted in these types of cases. And that's my final pitch for why this court doesn't need to send it back, because there is support here for this condition. Counsel, based on what you just said, is it your position that the special condition that was imposed in this case would be appropriate in every case where a defendant has produced child pornography? No, I think that the court would have a fact by fact analysis of every case and imposing a special condition. But and I didn't talk about the cycle. But isn't that isn't that isn't that the point that we don't know from the district judge, whether why he imposed the condition? But if this court can look at these facts, the nature and circumstance of the offense, the defendant's characteristics, as well as the psychological examination and find that it's supported. Isn't the district judge, counsel, isn't the district judge in a better position than we are having lived through this case and heard the evidence and heard the arguments? Why isn't the district judge someone who should do the correct analysis at this point? I think if this case was a trial, I would 100 percent agree with you, Your Honor. I think the fact that it's a sentencing and there wasn't much in-person courtroom work diminishes it. You're in a better position. I mean, the judge considered the PSR, which this court can consider. The judge considered the written evaluation, which this court can consider. The judge can have an evidentiary hearing. We can't do that. That's true. The judge didn't in this case. And the government is stuck with what the record is. The judge might think he should. We don't know that right now. Again, that's all true. But with plain error, part of the analysis and part of the judicial economy, I think But we understand why this condition exists. That's why the court can still affirm the district court. Thank you. Thank you, counsel. Rebuttal. Thank you. I have nothing further to add on rebuttal unless there are any questions. Apparently not. And I'll cede my time to the court and ask the court reverse. We appreciate that. Thank you so much. We appreciate your arguments, both sides. And the case will be submitted. The counsel are excused and the court.